## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **Raelyn Campbell**<br>**1921 17ᵗʰ St., NW**<br>**Washington, D.C.  20096**<br><br>**Plaintiff**<br><br>vs.<br><br>**Best Buy Company, Incorporated**<br><br>**Best Buy Stores, Limited Partnership**<br><br>and<br><br>**Geek Squad, Incorporated,**<br><br>**Defendants.** | **Civil Action No. _____**<br><br><br>**COMPLAINT AND**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Raelyn Campbell, through counsel, files this Complaint against Defendants Best Buy Company, Incorporated, Best Buy Stores, Limited Partnership, and Geek Squad, Incorporated (hereinafter collectively referred to as "Defendants").  Ms. Campbell contends that the Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.* (2009); the District of Columbia Consumer Personal Information Security Breach Notification Act of 2006, D.C. CODE ANN. §28–3851 (2009); the District of Columbia Consumer Protection Statute, Unfair Trade Practices, D.C. CODE ANN. §28-3904 (2009); the District of Columbia Uniform Commercial Code, D.C. CODE ANN. §28-1:101 (2009); Consumers, Commercial Practices, and Civil Infractions, Repairs of Consumer Goods, Receiving Items to be Repaired, D.C. MUN. REGS. tit. 16, §632 (2004); and Consumers, Commercial Practices, and Civil Infractions, Repairs of Consumer Goods, Prohibited Acts and Conduct, D.C. MUN. REGS. tit. 16, §650 (2004).

Additionally, Ms. Campbell asserts claims against the Defendants for breach of contract negligent misrepresentation, fraud, and breach of warranty.  In support of her allegations, Ms. Campbell alleges as follows:

**PARTIES**

**Raelyn Campbell**

1.    Raelyn Campbell is a citizen of the District of Columbia.

**Best Buy Company, Incorporated**

2.    Defendant Best Buy Company, Incorporated is a Minnesota corporation that maintains its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423.

3.    The Defendant Best Buy Company, Incorporated conducts business in the District of Columbia by operating two retail stores therein:  4500 Wisconsin Avenue, NW, Washington, D.C. 20016, Store No. 801 (Tenleytown) and 3100 14th Street, NW, Washington, D.C., 20010, Store No. 1092 (Columbia Heights).

4.    Defendant Best Buy Company, Incorporated has not designated a registered agent for service of process in the District of Columbia.

5.    Under D.C. CODE ANN. §13-334(a) (2009), Defendant Best Buy Company, Incorporated may be served in the District of Columbia through the General Manager of the retail store in Tenleytown.  *See* D.C. CODE ANN. §13-334(a) (2009).

6.    The General Manager of the Tenleytown retail store is an agent of Defendant Best Buy Company, Incorporated and thus conducts business on behalf of the same.

7.    Therefore, under D.C. CODE ANN. §13-334(a) (2009), the General Manager of Store No. 801, is effectual to bring Defendant Best Buy Company, Incorporated before this Court. *See* D.C. CODE ANN. §13-334(a) (2009).

8.    Additionally, under D.C. CODE ANN. §13-334(b) (2009), service upon the General Manager of the Tenleytown retail store is effectual to bring Best Buy Company,

2

9.  Likewise, under D.C. CODE ANN. § 13-334(b), service on the General Manager of the Tenleytown retail store is effectual to bring Best Buy Company, Incorporated before this Court because this case emanates from torts committed in the District of Columbia. *See id.*

10. Ms. Campbell will also serve Defendant Best Buy Company, Incorporated through its registered agent in Minnesota, CT Corporation System, Incorporated, at 401 Second Avenue South, in Minneapolis, Minnesota 55401.

**Best Buy Stores, Limited Partnership**

11. Upon information and belief, Defendant Best Buy Stores, Limited Partnership, is a wholly-owned subsidiary of Defendant Best Buy Company, Incorporated.

12. Defendant Best Buy Stores, Limited Partnership is a Virginia Limited Partnership with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423.

13. Best Buy Stores, Limited Partnership, conducts business in the District of Columbia by offering computer and technology services through Geek Squad, Incorporated at the Tenleytown and Columbia Heights retail stores therein.

14. CT Corporation System is Defendant Best Buy Stores, Limited Partnership's registered agent in the District of Columbia.

15. Consequently, Defendant Best Buy Stores, Limited Partnership, will receive service of process through CT Corporation at 1015 15th Street, NW, Suite 1000, Washington, D.C. 20005.

**Geek Squad, Incorporated**

16.    Upon information and belief, Defendant Geek Squad, Incorporated is a Minnesota corporation that maintains its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423.

17.    Upon information and belief, Defendant Geek Squad, Incorporated is a wholly-owned subsidiary of Defendant Best Buy Company, Incorporated.

18.    Defendant Geek Squad, Incorporated conducts business in the District of Columbia at Defendant Best Buy's Tenleytown and Columbia Heights retail stores.

19.    However, Geek Squad, Incorporated does not maintain a registered agent for service of process in the District of Columbia.

20.    Under D.C. CODE ANN. §13-334(a) (2009), Defendant Geek Squad, Incorporated may be served in the District of Columbia by serving the Geek Squad Service Manager at the Best Buy retail store in Tenleytown.  *See* D.C. CODE ANN.  §13-334(a) (2009).

21.    The Geek Squad Service Manager is an agent of Defendant Geek Squad, Incorporated and thus conducts business on behalf of the same.

22.    Therefore, under D.C. CODE ANN. §13-334(a) (2009), Defendant Geek Squad, Incorporated may be served in the District of Columbia by serving by the Geek Squad Service Manager at the Tenleytown retail store.  *See* D.C. CODE ANN. §13-334(a) (2009).

23.    Additionally, under D.C. CODE ANN. §13-334(b) (2009), service upon the Tenleytown Geek Squad Service Manager is effectual to bring Geek Squad, Incorporated before this Court because this dispute arises from a contract executed in the District of Columbia and called for performance in the same.  *See* D.C. CODE ANN. §13-334(b) (2009).

24.    Likewise, under D.C. CODE ANN. §13-334(b), service on the Tenleytown Geek Squad Service Manager is effectual to bring Geek Squad, Incorporated before this Court because this case emanates from torts committed in the District of Columbia.  *See id.*

25.   Additionally, Ms. Campbell will also serve Defendant Geek Squad, Incorporated through its registered agent in Minnesota, Best Buy Stores, Limited Partnership, at 590 Park Street, #6, Saint Paul, Minnesota 55103.

## SUBJECT MATTER JURISDICTION

### Original Jurisdiction

26.   This action involves claims arising under the laws of the United States, namely the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §2301 *et seq.* (2009).

27.   Therefore, pursuant to 28 U.S.C. §1331 (2009), this Court has original jurisdiction over this matter.  *See* 28 U.S.C. §1331 (2009).

### Diversity Jurisdiction

28.   Because the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and is between citizens of different States, 28 U.S.C. §1332(a)(1) (2009) confers subject matter jurisdiction to this Court for the claims arising under D.C. CODE ANN.  §§28- 3851, 3904 (2009)**;** D.C. CODE ANN. §28-1:101 (2009); and D.C. MUN. REGS. tit. 16, §§632, 650 (2004).   Additionally, Ms. Campbell asserts claims against the Defendants for breach of contract, breach of warranty, negligent misrepresentation and fraud.  *See* 28 U.S.C. §1332(a) (1) (2009).

### Supplemental Jurisdiction

29.   Under 28 U.S.C. § 1367(a) (2009), this Court has supplemental jurisdiction over Ms. Campbell's claims for breach of contract, breach of warranty, negligent misrepresentation and fraud, as these claims are so related to the MMWA claims and those arising under D.C. CODE ANN.  §§28- 3851, 3904 (2009)**;** D.C. CODE ANN. §28-1:101 (2009); and D.C. MUN. REGS. tit. 16, §§632, 650 (2004), that they form part of the same Case and Controversy under Article III of the United States Constitution.  *See* 28 U.S.C. §1367(a) (2009).

## PERSONAL JURISDICTION

30.    This Court can exercise specific personal jurisdiction over the Defendants because they conduct business and sell manufactured goods and services within the District of Columbia through a retail store located in Tenleytown, with a second location in Columbia Heights.

31.    Additionally, this Court can exercise specific personal jurisdiction over Defendants because a substantial part of the acts have been and were, in whole or in part, transpired and made effective in the District of Columbia.

## VENUE

32.    Venue is proper in this District under 28 U.S.C. § 1391(c) (2009) since Defendants are all legal entities subject to personal jurisdiction within this District.  *See* 28 U.S.C. § 1391(c) (2009).

33.    Therefore, the Defendants were subject to this Court's personal jurisdiction at the time the events giving rise to the action occurred.  *See id.*

34.    Similarly, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a)  (2009) because the Defendants conduct business in the District of Columbia, are found within this District, and a substantial part of the events giving rise to the claims at issue in this Complaint arose in this District.   *See* 28 U.S.C. § 1391(a) (2009).

## FACTUAL ALLEGATIONS

### A.  The Defendants' Relevant Commercial Activities

35.    Defendants Best Buy Company, Incorporated and Best Buy Stores, Limited Partnership, (Collectively Best Buy) are national retail merchants who are in the business of selling manufactured goods, namely electronic merchandise, throughout the United States.

36.    More specifically, Defendants Best Buy maintains two retail stores in the District of Columbia:  Tenleytown and Columbia Heights.

37.    Before completing sales transactions, Defendant Best Buy attempts to sell the customer a Best Buy Performance Service Plan for items being purchased, including electronic merchandise.

38.    If the customer elects to purchase the optional Best Buy Performance Service Plan from Defendant Best Buy, the Best Buy Performance Service Plan acts as a warranty on the purchased electronic good.

39.    Defendant Geek Squad, Incorporated offers technology service to customers at Defendant Best Buy's retail stores.

40.    More specifically, Defendant Geek Squad, Incorporated advertises that its Agents and Installers have the requisite skills to set up and install a customer's computer and network, repair computers, provide support and the like.

41.    Defendant Geek Squad, Incorporated offers these services and others to customers at Defendant Best Buy's Tenleytown and Columbia Heights retail stores.

42.    Under the Best Buy Performance Service Plan sold by Defendant Best Buy, customers bring their computers to Defendant Geek Squad at a Defendant Best Buy's retail store for repair at the store or at a designated repair facility.

**B. Ms. Campbell's January 15, 2006 Purchase From Defendant Best Buy's Tenleytown Store**

43.    On January 15, 2006, Ms. Campbell purchased from Defendant Best Buy's Tenleytown store, a Compaq laptop model V2570NR with a 14 inch screen and a serial number of CNF5500Y70.  A copy of the Jan. 15, 2006 receipt is attached as Ex. A; *see also* Affidavit of Raelyn Campbell dated Mar. 23, 2009 (hereinafter Campbell Aff.) ¶2.

44.    Compaq manufactured Ms. Campbell's laptop after January 4, 1975.

45.    Ms. Campbell selected this particular laptop model because the Defendant Geek Squad's Counter Intelligence Agent Mary Doe advised Ms. Campbell that the capabilities of Compaq model V2570NR satisfied her performance, size, cost, and data storage capacity requirements.  Campbell Aff. ¶3.

46.    Ms. Campbell paid Defendant Best Buy the purchased price of seven hundred and ninety-nine dollars and ninety-nine cents ($799.99) for the selected Compaq laptop. *See* Jan. 15, 2006 receipt at Ex. A at 3.

47.    Before completing the sales transaction, Agent Mary Doe sales staff offered Ms. Campbell a Best Buy Performance Service Plan option.  Campbell Aff. ¶4.

48.    Agent Mary Doe, a Geek Squad employee, promoted the Best Buy Performance Service Plan to Ms. Campbell as a necessity in the event something went wrong with her Compaq laptop.  Campbell Aff. ¶5.

49.    During the promotion of the Best Buy Performance Service Plan, Agent Mary Doe never told Ms. Campbell who was responsible for repairing her Compaq laptop in the event it malfunctioned.  Campbell Aff. ¶6.

50.    More specifically, Agent Mary Doe did not specify whether the terms of the Best Buy Service Plan would make Best Buy and or Geek Squad responsible for repairing or replacing Ms. Campbell's Compaq laptop.  Campbell Aff. ¶7.

51.    Furthermore, Agent Mary Doe, a Geek Squad employee, never clarified for Ms. Campbell whether the Best Buy Performance Service Plan was being offered by her employer or Defendant Best Buy.  Campbell Aff. ¶8.

52.    On January 15, 2006, Ms. Campbell paid Defendant Best Buy two hundred and ninety nine-dollars and ninety-nine cents ($299.99) for a three (3) year "Best Buy Performance Service Plan," No. 2581489504 for her Compaq laptop. *See* Jan. 15, 2006 receipt as Ex. A at 3.

53.    Ms. Campbell's Best Buy Performance Service Plan also included Accidental Damage from Handling (ADH) coverage. A copy of Ms. Campbell's Best Buy Performance Service Plan is attached as Jan. 15, 2006 receipt as Ex. A at 2-3.

54.    To complete the sales transaction, Ms. Campbell paid Defendant Best Buy a total of one thousand one hundred ten dollars and thirty-five cents ($1,110.35). *See id.* at 3.

### C. Relevant Terms From Ms. Campbell's Best Buy Performance Service Plan No. 2581489504

55.    Ms. Campbell's Best Buy Performance Service Plan states "[a]ll Plan coverage commences on the original product purchase date and will expire on the date notated on your purchase receipt." *Id.* at 2.

56.    Accordingly, since Ms. Campbell purchased her Compaq laptop on January 15, 2006, her Best Buy Performance Service Plan began on that date. Campbell Aff. ¶9.

57.    Language from Ms. Campbell's Best Buy Performance Service Plan states that, "[c]overage under the standard Plan expires two (2) or three (3) years from the original product purchase date as stated on your purchase receipt." Jan. 15, 2006 receipt as Ex. A at 2.

58.    Thus, Ms. Campbell's three-year Best Buy Performance Service Plan expired on January 14, 2009. Letter Nov. 28, 2008 from Best Buy to Raelyn Campbell is attached as Ex. B.

59.    Ms. Campbell's Best Buy Performance Service Plan also states that, "[c]overage under the standard Plan with Accidental Damage from Handling coverage (ADH) expires three (3) years from the original product purchase date as stated on your purchase receipt." *See* Jan. 15, 2006 receipt as Ex. A at 2.

60.    According to Ms. Campbell's Best Buy Performance Service Plan, upon expiration, "[m]ost plans are renewable." *Id.*

61.    In a letter dated November 28, 2008, Defendant Best Buy advised Ms. Campbell that this writing was her "**last reminder** to renew" her "Best Buy Performance Service Plan" on her "[Compaq] Laptop Computer and protect" herself "from unexpected repair costs in the future." Letter of Nov. 18, 2008 from Best Buy to Raelyn Campbell as Ex. B at 2**.** (emphasis in the original).

62.    In this same November 28th communication, Defendant Best Buy asked Ms. Campbell did she "really want to miss out on all the benefits of coverage?" *Id.*

63.    Relevant language from Ms. Campbell's Best Buy Performance Service Plan also states that, "[t]his Plan is inclusive of the manufacturer's warranty; it does not replace the manufacturer's warranty, but provides certain additional benefits during the term of the manufacturer's warranty.    After the manufacturer's warranty expires, this Plan continues to provide the manufacturer's benefits as well as certain additional benefits listed within the Plan's Terms and Conditions." Jan. 15, 2006 receipt as Ex. A at 2.

64.    Additional language from Ms. Campbell's Best Buy Performance Service Plan states that, "[g]uaranteed turn time when the preferred call in solution is calculated as, when the item is picked up by a third party shipper is considered day one and when shipper makes first attempted delivery is considered fulfillment of turn time." *Id.*

65.    The Best Buy Performance Service Plan states that, "[g]uaranteed turn time when your item is brought to a Best Buy store is defined as the item received or case created prior to 12:00 P.M. CST on any day is considered day one. If your item is brought to a Best Buy store after 12:00 P.M. CST on any day$_{[,]}$ guaranteed turn time starts the following day." *Id*.

66.    Ms. Campbell's Best Buy Performance Service Plan further states that Defendants will ". . . try to complete service as quickly as possible." *Id.*

67.    Ms. Campbell's Best Buy Performance Service Plan states that "[i]f you have purchased Accidental Damage from Handling Coverage, (ADH) this [P]lan will cover unintentional damage to your notebook that is the result of normal daily usage such as spills and drops, visit your local store for details." *See* Jan. 15, 2006 receipt as Ex. A at 2.

68.    Also, Ms. Campbell's Best Buy Service Plan states that "[t]his plan covers manufacturer's defects in materials and workmanship that are the result of normal usage." *Id.*

69.    The back of Ms. Campbell's January 15, 2006 sales receipt includes a note about data on returned or exchanged products. *See* Jan. 15, 2006 receipt at Ex. at 4.

70.    More specifically, its states

> **NOTE REGARDING PERSONAL DATA ON RETURNED OR EXCHANGED PRODUCTS**
> Please remove all personal data (e.g., computer or wireless phone data, videotapes) from any returned or exchanged products. Best Buy is not responsible for any personal data left on or in a returned or exchanged product.

*Id.* (emphasis in the original).

### D. Ms. Campbell's Use of Her Compaq Laptop

71.    Ms. Campbell used her Compaq laptop primarily for personal purposes. Campbell Aff. ¶10.

72.    Periodically, Ms. Campbell used her Compaq laptop for professional reasons. Campbell Aff. ¶11.

73.    Ms. Campbell's laptop came preinstalled with a free trial period for the "Microsoft Office 2003 System." Campbell Aff. ¶12.

74.    Once the trial period ended, Ms. Campbell had the option of purchasing from Microsoft its Office 2003 System. Campbell Aff. ¶13.

75.   On November 27, 2006, Ms. Campbell purchased from Microsoft this software for three hundred ninety-nine dollars ($399.00).  A copy of the Nov. 27, 2006 receipt is attached as Ex. C.

76.   Additionally, Ms. Campbell separately purchased and installed on her Compaq laptop the following software:  (a) Symantec's Norton Internet Security Software, (b) "Living Language Italian Complete Course:  The Basics (Lessons 1 – 14)," and (c) Fuji Finepix A303 digital camera software files.  Campbell Aff. ¶14.

77.   Ms. Campbell downloaded and organized a significant number of digital music files on to her Compaq laptop.  Campbell Aff. ¶15.

78.   These digital music files consisted of albums and song files Ms. Campbell purchased from various internet companies and those she transferred from CDs that she collected and purchased during the past 20 years.  Campbell Aff. ¶16.

79.   Similarly, Ms. Campbell uploaded, organized, and digitally stored five years of personal photos on to her Compaq laptop.  Campbell Aff. ¶17.

80.   Ms. Campbell also catalogued on to her laptop personal legal documents including her power of attorney, living trust and advance medical directive.  Campbell Aff. ¶18.

81.   Ms. Campbell also warehoused on her Compaq laptop documents consisting of presentations, marketing documents, research papers and publications she prepared for work.  Campbell Aff. ¶19.

82.   Additionally, Ms. Campbell saved to her Compaq laptop files containing personal and confidential materials including her tax returns.  Campbell Aff. ¶20.

83.   These tax returns contained confidential and sensitive information including Ms. Campbell's social security number.  Campbell Aff. ¶21.

84.   Ms. Campbell maintained on her Compaq laptop information regarding her real estate holdings.  Campbell Aff. ¶22.

85.   Lastly, Ms. Campbell kept information regarding her financial portfolio on her Compaq laptop.  Campbell Aff. ¶23.

**E.  Ms. Campbell's Laptop Malfunctions**

86.   Ms. Campbell began experiencing minor difficulties with the on-off switch on her Compaq laptop shortly after she purchased it on January 15, 2006.  Campbell Aff. ¶24.

87.   In early 2007, Ms. Campbell began experiencing increasing difficulty with a defective on-off switch on her Compaq laptop.  Campbell Aff. ¶25.

88.   Then on April 1, 2007, the Compaq laptop's on-off switch ceased functioning altogether.  Campbell Aff. ¶26.

89.   More specifically, the on-off switch would no longer depress properly to power on Ms. Campbell's Compaq laptop.  Campbell Aff. ¶27.

90.   Therefore, Ms. Campbell could not turn on her Compaq laptop to retrieve any documents, back up any unsaved files, or delete them from her computer before bringing it to the Defendants for repair.  Campbell Aff. ¶28.

91.   In an attempt to ascertain what paperwork, if any, she needed to bring to have her Compaq laptop repaired, Ms. Campbell made several unsuccessful telephone calls to the computer department at Defendants' Tenleytown store.  Campbell Aff. ¶29.

92.   The number Ms. Campbell dialed is 202-895-1580.  Campbell Aff. ¶30.

**F.  Ms. Campbell Returns Her Malfunctioning Laptop for Repair**

93.   On May 19, 2007, Ms. Campbell took her malfunctioning laptop to Defendant Geek Squad's help desk at Defendant Best Buy's Tenleytown store for repair, as instructed by Defendant Geek Squad Agent Mary Doe on January 15, 2006, the day Ms. Campbell purchased the laptop.  Campbell Aff. ¶31.

94.   At Defendant Geek Squad's help desk, Ms. Campbell spoke with John Doe, a Defendant Geek Squad Counter Intelligence Agent.  Campbell Aff. ¶32.

13

95.   Agent John Doe reviewed Ms. Campbell's paperwork, verified that the service plan was valid, and asked about the nature of the problem with her Compaq laptop. Campbell Aff. ¶33.

96.   Ms. Campbell explained to Agent John Doe that the Compaq's on-off switch was defective and ultimately ceased functioning. Campbell Aff. ¶34.

97.   Defendant Geek Squad's Counter Intelligence Agent John Doe tested Ms. Campbell's Compaq by trying to turn on the laptop and by replacing the power cord to confirm that a malfunctioning power cord was not the source of the problem. Campbell Aff. ¶35.

98.   Agent John Doe told Ms. Campbell that someone else at Defendant Best Buy's Tenleytown store would look at the Compaq laptop. Campbell Aff. ¶36.

99.   Agent John Doe indicated that in the event that the Defendants could not repair Ms. Campbell's Compaq laptop on site, they would ship the computer to another facility for repair. Campbell Aff. ¶37.

100.  Agent John Doe then filled out sections of an In-Store Tactical Analysis form by adding "will not power on" and "send to DTV." A copy of the In-Store Tactical Analysis is attached as Ex. D; Campbell Aff. ¶38.

101.  Counter Intelligence Agent John Doe asked Ms. Campbell to complete the top section of the In-Store Tactical Analysis form with her name, address, and telephone number, and computer brand and model number. Campbell Aff. ¶39.

102.  Additionally, Counter Intelligence Agent John Doe told Ms. Campbell that the Defendants would call her within two to six weeks when they were done repairing her laptop. Campbell Aff. ¶40.

103.  Agent John Doe made no attempt to advise Ms. Campbell of the potential for data loss during the course of repairing her Compaq laptop's on-off switch. Campbell Aff. ¶41.

104.    Likewise, Agent John Doe did not recommend data back-up services to Ms. Campbell. Campbell Aff. ¶42.

105.    Agent John Doe did not advise Ms. Campbell that she should remove the hard drive of the Compaq laptop before she gave it to the Defendants for repair.  Campbell Aff. ¶43.

106.    In fact, Agent John Doe did not offer Ms. Campbell any measures, suggestions or the like to minimize Ms. Campbell's risk of data loss.  Campbell Aff. ¶44.

107.    Similarly, Agent John Doe never advised Ms. Campbell of the potential for a security breach while the Defendants repaired her Compaq laptop.  Campbell Aff. ¶45.

108.    Upon information and belief, repairing the on-off switch on Ms. Campbell's Compaq laptop should not have had an adverse effect on the data stored on the hard drive.

109.    When Ms. Campbell bought her Compaq to the Defendants for service, she never received any written materials that discussed potential data loss or disclaimers about the same.   Campbell Aff. ¶46.

110.    However, Agent John Doe did tell Ms. Campbell that she could track the repair status of her laptop on the Geek Squad website and/or by calling the Geek Squad service number or the Defendant's Tenleytown store.  Campbell Aff. ¶47.

111.    Defendant Geek Squad's Counter Intelligence Agent John Doe offered Ms. Campbell no paperwork evidencing receipt of her computer for repair.   Campbell Aff. ¶48.

112.    Surprised by Agent John Doe's omission, Ms. Campbell asked him for documentation to show that her Compaq laptop was now in Defendant Geek Squad's possession. Campbell Aff. ¶49.

113.    Defendant Geek Squad's Counter Intelligence Agent John Doe appeared to not understand Ms. Campbell's request.  Campbell Aff. ¶50.

114.    At Ms. Campbell's insistence and direction, Defendant Geek Squad's Counter Intelligence Agent John Doe provided Ms. Campbell with a scanned copy of the In-Store Tactical Analysis form as proof that she gave Defendant Geek Squad her Compaq laptop for repair.  Campbell Aff. ¶51.

115.    At no time in Ms. Campbell's presence did Defendant Geek Squad's Counter Intelligence Agent John Doe create a record other than the In-Store Tactical Analysis form to memorialize the transfer of possession of Ms. Campbell's Compaq laptop from Ms. Campbell to Geek Squad.  Campbell Aff. ¶52.

### G. Defendants Cannot Find a Repair Record for Ms. Campbell's Laptop

116.    In mid-June 2007, Ms. Campbell tried to check the repair status of her Compaq on Defendant Geek Squad's website.  Campbell Aff. ¶53.

117.    However, the reference number listed on the In-Store Tactical Analysis form that she received from Defendant Geek Squad's Counter Intelligence Agent John Doe failed to enable her to access a record.  Campbell Aff. ¶54.

118.    Similarly, Defendant Geek Squad helpline agents repeatedly advised Ms. Campbell in mid June that her laptop was not in the Geek Squad system.  Campbell Aff. ¶55.

119.    Eventually, Defendant Geek Squad helpline agents recommended that Ms. Campbell contact the help desk at the Tenleytown store for a valid record number.  Campbell Aff. ¶56.

### H. Ms. Campbell's July 1, 2007 Visit to Defendant Best Buy's Tenleytown Store

120.    In late June 2007, Ms. Campbell made several telephonic attempts to contact the Defendants at the Tenleytown store to inquire about her Compaq laptop.  Campbell Aff. ¶57.

121.    Using the Tenleytown store's advertised telephone number of 202-895-1580, in late June 2007, Ms. Campbell repeatedly called the number.  Campbell Aff. ¶58.

122.    Eventually, when a Best Buy employee at the Tenleytown store answered Ms. Campbell's call, the Best Buy employee transferred Ms. Campbell's call to the Computer Department. Campbell Aff. ¶59.

123.    However, a representative from Defendant Best Buy's computer department at the Tenleytown store never answered the transferred call. Campbell Aff. ¶60.

124.    On July 1, 2007, Ms. Campbell went to Defendant Best Buy's Tenleytown store to ask the Defendants about the repair status of her Compaq laptop. Campbell Aff. ¶61.

125.    Defendant Geek Squad's Counter Intelligence Agent Joe Doe requested Ms. Campbell's paperwork. Campbell Aff. ¶62.

126.    Ms. Campbell presented the In-Store Tactical Analysis form that she received from John Doe on May 19, 2007. Campbell Aff. ¶63.

127.    Agent Joe Doe checked the help desk computer, and initially told Ms. Campbell that her Compaq laptop was not in the system. Campbell Aff. ¶64.

128.    After spending more time on the help desk computer, Agent Joe Doe provided Ms. Campbell with reference number 00801 910 733 027 to enable her to check the repair status of her Compaq laptop. A copy of the reference number is attached as Ex. E; Campbell Aff. ¶65.

129.    More specifically, Agent Joe Doe wrote the reference number he gave Ms. Campbell on the back of some Best Buy sales receipt paper. *See id.*; Campbell Aff. ¶66.

130.    On July 1, 2007, Agent Joe Doe assured Ms. Campbell that even though he could not verify the repair status using his in-store help desk computer, he assured her that Defendant Geek Squad had her Compaq laptop. Campbell Aff. ¶67.

131.    Additionally, Agent Joe Doe advised Ms. Campbell that the repair record for her Compaq laptop was in the Geek Squad computer system. Campbell Aff. ¶68.

132.   Furthermore, Defendant Geek Squad's Counter Intelligence Agent Joe Doe told Ms. Campbell that she could use the Defendant's website or call Defendant Geek Squad's helpline to verify her Compaq laptop's repair status.  Campbell Aff. ¶69.

**I.   Ms. Campbell Telephones Defendant Geek Squad's Customer Service Department**

133.   Consistent with her repeated efforts to locate her Compaq laptop, Ms. Campbell continued to call Defendant Geek Squad's helpline at 1-800-GEEKSQUAD.  Campbell Aff. ¶70.

134.   On several occasions, the Geek Squad helpline went unanswered.  Campbell Aff. ¶71.

135.   Sometimes when an agent did answer the Geek Squad helpline, Ms. Campbell was put on hold for so long that out of frustration, she hung up.  Campbell Aff. ¶72.

136.   But on July 11, 2007, Ms. Campbell called Defendant Geek Squad and spoke with Agent David Goodfellow.  Campbell Aff. ¶73.

137.   Despite initial difficulty in locating the computer's record in the system, Agent Goodfellow informed Ms. Campbell that her Compaq laptop would be "ready within [a few] days."  Campbell Aff. ¶74.

138.   Agent Goodfellow confirmed that Defendant Geek Squad would call Ms. Campbell when the Compaq laptop was ready to ship.  Campbell Aff. ¶75.

139.   After her conversation with Agent Goodfellow on July 11, 2007, no one from Defendant Geek Squad called Ms. Campbell.  Campbell Aff. ¶76.

140.   Consequently, on July 19, 2007, Ms. Campbell called Defendant Geek Squad's helpline again and spoke to Jane Doe, an agent of Defendant Geek Squad.  Campbell Aff. ¶77.

141.   After initial difficulty locating the record, Jane Doe informed Ms. Campbell that her Compaq laptop was at the Louisville Service Center.   Campbell Aff. ¶78.

142.   Jane Doe assured Ms. Campbell that she should expect a call soon about her laptop's shipment.  Campbell Aff. ¶79.

143.    After her conversation with Agent Jane Doe on July 19, 2007, no one from Defendant Geek Squad telephoned Ms. Campbell about the shipment of her Compaq laptop. Campbell Aff. ¶80.

144.    Consequently, on July 25, 2007, Ms. Campbell called Defendant Geek Squad's helpline and spoke to Brenda Last Name Unknown (LNU), an agent of Defendant Geek Squad. Campbell Aff. ¶81.

145.    When Agent Brenda LNU could not confirm additional information, she transferred Ms. Campbell to Daniel LNU, who likewise is a Defendant Geek Squad Agent. Campbell Aff. ¶82.

146.    After some initial hesitation, Daniel LNU asserted to Ms. Campbell that the repaired unit should ship soon.  Campbell Aff. ¶83.

147.    Ms. Campbell reminded Daniel LNU that since July 11, 2007, she had heard similar statements.  Campbell Aff. ¶84.

148.    Therefore, Ms. Campbell insisted on confirmation from Defendant Geek Squad Agent Daniel LNU of the actual repair status of her Compaq.  Campbell Aff. ¶85.

149.    After several minutes of conferring with others, Daniel LNU confirmed that Defendant Geek Squad had just ordered a part for her computer.  Campbell Aff. ¶86.

150.    Then Daniel LNU assured Ms. Campbell that the part's arrival and her laptop's shipment were imminent.  Campbell Aff. ¶87.

**J.  Defendant Geek Squad Referred Ms. Campbell to Defendant Best Buy's Customer Service Department**

151.    Ms. Campbell questioned Defendant Geek Squad Agent Daniel LNU as to why the repair was taking the Defendant two months.  Campbell Aff. ¶88.

152.  In response, Daniel LNU informed Ms. Campbell that according to Defendant Geek Squad's records, the Compaq laptop had only been in Defendant Geek Squad's possession at the Louisville Service Center since July 4, 2007.  Campbell Aff. ¶89.

153.  When Ms. Campbell told Daniel LNU that she had taken her Compaq laptop to Tenleytown store in May 2007 for repair, he transferred her to Defendant Best Buy's customer service line.  Campbell Aff. ¶90.

154.  Ms. Campbell then spoke to Will LNU, a customer service employee of Defendant Best Buy.  Campbell Aff. ¶91.

155.  Will LNU informed Ms. Campbell that he would file an escalation to expedite the repair and return of her Compaq laptop.  Campbell Aff. ¶92.

156.  Will LNU promised to promptly telephone Ms. Campbell with a status report.  Campbell Aff. ¶93.

157.  Additionally, Will LNU gave Ms. Campbell a specific extension, 5566, for her to use to make follow-up inquiries.  Campbell Aff. ¶94.

158.  Will LNU never called Ms. Campbell.  Campbell Aff. ¶95.

159.  On August 7, 2007, Ms. Campbell spoke by telephone with Ashley LNU, a Defendant Best Buy Customer Service employee.  Campbell Aff. ¶96.

160.  Ashley LNU could not confirm any additional information about the status of Ms. Campbell's Compaq laptop.  Campbell Aff. ¶97.

161.  Ms. Campbell expressed frustration to Ashley LNU that multiple telephone calls and the filing of the escalation had yielded no new information as to the status of her Compaq laptop.  Campbell Aff. ¶98.

162.  Ms. Campbell then asked to speak to a Defendant Best Buy Customer Service Manager.  Campbell Aff. ¶99.

163. Ashley LNU told Ms. Campbell that Marsha LNU, a Defendant Best Buy Customer Service Manager, was in a meeting.  Campbell Aff. ¶100.

164. Because Ms. Campbell wanted to speak with someone with authority, she told Ashley LNU that she wished to remain on hold until Marsha LNU could speak to her. Campbell Aff. ¶101.

165. After some time passed, Ashley LNU told Ms. Campbell that she would make sure that Marsha LNU returned her telephone call as soon as the meeting ended.  Campbell Aff. ¶102.

166. Ashley LNU also confirmed at this time that Marsha LNU could be reached by dialing extension 5333 when prompted on the Best Buy Customer Service line.  Campbell Aff. ¶103.

167. Ms**.** Campbell never received a call from Marsha LNU.  Campbell Aff. ¶ 104.

### K. Defendant Best Buy Admitted that It Could Not Find Ms. Campbell's Compaq Laptop

168. On August 9, 2007, Ms. Campbell attempted to reach Marsha LNU by telephone by using the extension provided to her by Ashley LNU.  Campbell Aff. ¶105.

169. Defendant Best Buy employee Cicero LNU answered the telephone and told Ms. Campbell that Marsha LNU was unavailable.  Campbell Aff. ¶106.

170. Ms. Campbell explained to Cicero LNU that she had been waiting for the Defendants to return her Compaq laptop since May**.**  Campbell Aff. ¶107.

171. Ms. Campbell explained to Cicero LNU that she was frustrated by the Defendants lack of responses to her inquiries and lack of information concerning her Compaq laptop. Campbell Aff. ¶108.

172.    Ms. Campbell also expressed concern that Defendant Geek Squad's website continued to show her Compaq's service status as "checked in at store." A copy of the Geek Squad Service Status document is attached as Ex. F; Campbell Aff. ¶109.

173.    Ms. Campbell questioned Cicero LNU about the exact location and status of her Compaq laptop. Campbell Aff. ¶110.

174.    Cicero LNU reviewed Defendant Best Buy's records and disclosed to Ms. Campbell that there was no record that her Compaq laptop had ever officially left Defendant Best Buy's Tenleytown store. Campbell Aff. ¶111.

175.    Cicero LNU confirmed to Ms. Campbell that he could see a record of all her contacts with Defendants to date. Campbell Aff. ¶112.

176.    Then Cicero LNU confirmed to Ms. Campbell that based on the information in the computer system, he did not know why his colleagues would have told her that her Compaq laptop was in Louisville being repaired. Campbell Aff. ¶113.

177.    Cicero LNU advised Ms. Campbell that he was filing a complaint on her behalf. Campbell Aff. ¶114.

178.    Additionally, Cicero LNU informed Ms. Campbell that the Best Buy complaint had an assigned case number of 39781346. Campbell Aff. ¶115.

179.    Cicero LNU said he would contact Defendant Best Buy's Tenleytown store for an immediate response. Campbell Aff. ¶116.

180.    Upon information and Belief, the complaint Cicero LNU sent to Defendant Best Buy's Tenleytown store was an inquiry to establish the whereabouts of Ms. Campbell's laptop.

181.    Ms. Campbell did not receive a copy of the complaint Cicero LNU submitted. Campbell Aff. ¶118.

182.   On August 10, 2007, Cicero LNU telephoned Ms. Campbell, informing her that Defendant Best Buy's Tenleytown store had not yet responded to the complaint submitted on her behalf.  Campbell Aff. ¶119.

183.   Cicero LNU asked Ms. Campbell whether someone from Defendant Best Buy's Tenleytown store had contacted her.  Campbell Aff. ¶120.

184.   Ms. Campbell indicated that no one from Defendant Best Buy's Tenleytown store had contacted her.  Campbell Aff. ¶121.

185.   Next, Ms. Campbell asked Cicero LNU for the name of his point of contact at Defendant's Tenleytown store.  Campbell Aff. ¶122.

186.   Cicero LNU reported that it was Robert Delissio.  Campbell Aff. ¶123.

187.   Ms. Campbell later learned that Mr. Delissio was the General Manager of the Tenleytown store at that time.  Campbell Aff. ¶124.

188.   Cicero LNU told Ms. Campbell that if someone from Defendant Best Buy's Tenleytown store did not respond to his inquiry by the next morning, Defendant Best Buy would immediately send her a "card with compensation."  Campbell Aff. ¶125.

**L.  Defendant Best Buy's Promised Compensation Never Arrived**

189.   On August 11, 2007, Cicero LNU again called Ms. Campbell to notify her that Defendant Best Buy Tenleytown store had failed to confirm whether it had located her Compaq laptop.  Campbell Aff. ¶126.

190.   Cicero LNU expressed his intent to speak with his manager about Ms. Campbell's situation.  Campbell Aff. ¶127.

191.   Additionally, Cicero LNU indicated that the Defendants would immediately send Ms. Campbell compensation for her Compaq laptop.  Campbell Aff. ¶128.

192.   Ms. Campbell responded that she also had software, music, pictures, and other contents on the Compaq laptop for which she also expected compensation.  Campbell Aff. ¶129.

193.  In the two weeks following her August 11, 2007 conversation with Cicero LNU, Ms. Campbell did not receive any compensation from the Defendants.  Campbell Aff. ¶130.

194.  Contrary to Cicero's August 11, 2007 statements, none of the Defendants called Ms. Campbell to follow up with her.  Campbell Aff. ¶131.

195.  After several telephone calls on August 24, 2007, Ms. Campbell was successfully connected with the computer department at the Tenleytown store.  Campbell Aff. ¶132.

196.  During this August 24, 2007 telephone conversation, an employee, Jamal LNU, confirmed for Ms. Campbell that Michael French was the head of Customer Service for the computer department.  Campbell Aff. ¶133.

197.  However, Jamal LNU told Ms. Campbell that Mr. French was unavailable to speak with her.  Campbell Aff. ¶134.

198.  On August 25, 2007, Ms. Campbell sent a certified letter dated August 24, 2007 to Mr. French, at Defendant Best Buy's Tenleytown store seeking assistance.  Letter from Raelyn Campbell to Michael French of 8/24/07 at 2.  A copy of this 8/24/07 letter is attached as Ex. G at 2.

199.  Ms. Campbell's August 24th writing to Mr. French seeks assistance in remedying her situation.  *See id.*

200.  More specifically, Ms. Campbell asked Mr. French for "[c]onfirmation of what type of investigation has been conducted . . . in relation to the loss/theft of [the] computer."  *Id.* at 2.

201.  Ms. Campbell's August 24, 2007, correspondence also sought compensation in the amount of two thousand one hundred ten dollars and thirty-five cents ($2110.35).  *See id.*

202.  Neither Mr. French nor Defendant Best Buy responded to Ms. Campbell's August 24, 2007 communication.  Campbell Aff. ¶135.

203.   On August 26, 2007, Ms. Campbell received a voicemail from Wendy LNU, a manager with Defendant Best Buy Consumer Relations.  Campbell Aff. ¶136.

204.   In her voicemail, Wendy LNU confirmed that she was following up on Ms. Campbell's conversation with Cicero LNU to inform her that Defendant Best Buy would send Ms. Campbell a Best Buy gift card totaling nine hundred dollars ($900.00).  Campbell Aff. ¶137.

205.   This dollar amount, according to Wendy LNU's voicemail, consisted of seven hundred fifty dollars ($750.00) to compensate Ms. Campbell for her Compaq laptop and one hundred fifty dollars ($150.00) for the contents warehoused on her computer. Campbell Aff. ¶138.

206.   Additionally, in her voicemail, Wendy LNU stated that she had not sent the Best Buy gift card to Ms. Campbell as promised because she was not able to confirm Ms. Campbell's mailing address.   Campbell Aff. ¶139.

207.   On August 31, 2007, Ms. Campbell called Wendy LNU at telephone number 612-292-0013.  Campbell Aff. ¶140.

208.   Since Wendy LNU was not available, Ms. Campbell left a voice message in Wendy LNU's voicemail box that the Defendants' offered amount was inadequate.  Campbell Aff. ¶141.

209.   On the voice message, Ms. Campbell also told Wendy LNU that payment in the form of a Best Buy gift card was unacceptable.  Campbell Aff. ¶142.

210.   Lastly, Ms. Campbell told Wendy LNU that she could not believe her excuse for the delay in sending the Best Buy gift card.  Campbell Aff. ¶143.

211.   Ms. Campbell received neither the promised Best Buy gift card nor a response to her August 31, 2007 voice message to Defendant Best Buy.  Campbell Aff. ¶144.

**M. Ms. Campbell's October 7, 2007 Visit to Best Buy's Tenleytown Store**

212.    On October 7, 2007, Ms. Campbell went to Defendant Best Buy's Tenleytown store to follow up on her August 24, 2007 letter to Mr. French.  Campbell Aff. ¶145.

213.    During this visit, Ms. Campbell spoke to several Defendant Best Buy employees, including Sylvester LNU and Delunte Lewis, the Assistant General Manager of the Tenleytown store.  Campbell Aff. ¶146.

214.    Upon hearing the details of Ms. Campbell's missing Compaq laptop and at her request, Sylvester LNU called for a manager.  Campbell Aff. ¶147.

215.    While waiting for the arrival of a manager, Sylvester LNU used the Defendant Geek Squad's help desk computer to review the Defendants' record on Ms. Campbell's Compaq laptop.   Campbell Aff. ¶148.

216.    Sylvester LNU and several Defendant Geek Squad Agents at the help desk reviewed the Defendants' record on file at the help desk computer and confirmed again that there was no record of Ms. Campbell's Compaq laptop computer ever leaving the Tenleytown store.  Campbell Aff. ¶149.

217.    Ms. Campbell questioned why she had been erroneously led to believe by Defendant Geek Squad on multiple occasions that the Compaq computer was in Louisville being repaired**.**   Campbell Aff.¶150.

218.    The agents present at Defendant Geek Squad's help desk could not answer Ms. Campbell's question.  Campbell Aff. ¶151.

219.    However, the Defendant Geek Squad's Agents confirmed to Ms. Campbell that they could see the record of her telephone calls and communications with the Defendants on the Geek Squad help desk computer.  Campbell Aff. ¶152.

220. Defendant Geek Squad agents asked Ms. Campbell to produce the paperwork she was given regarding her Compaq laptop on the day she brought it in for service. Campbell Aff. ¶153.

221. In response, Ms. Campbell produced the In-Store Tactical Analysis form she received on May 19, 2007. Campbell Aff. ¶154.

222. Defendant Geek Squad's Agents expressed surprise that Ms. Campbell possessed the In-Store Tactical Analysis form. Campbell Aff. ¶155.

223. Then the Geek Squad Agents asked Ms. Campbell if she had a copy of the Service Order for her Compaq laptop. Campbell Aff. ¶156.

224. Upon information and belief, a Service Order is a computer-generated record that contains a customer's information, information on the product and its condition, and Defendant Geek Squad's disclaimers. A copy of the Service Order received by Ms. Campbell on Oct. 7, 2007 is attached as Ex. H.

225. Specifically, the Service Order acts like a receipt that memorializes the details surrounding the transfer of a malfunctioning product to the Defendants' possession. *See id.*

226. Ms. Campbell told the agents at Defendant Geek Squad's help desk that the In-Store Tactical Analysis form was the only document she received when she returned the Compaq laptop for repair on May 2007. Campbell Aff. ¶157.

227. The Geek Squad agents indicated that these actions conflicted with standard Geek Squad procedures. Campbell Aff. ¶158.

228. Ms. Campbell then asked the Defendant Geek Squad agents if she could see a copy of the record that they were looking at on the help desk computer. Campbell Aff. ¶159.

229. Defendant Geek Squad agents provided Ms. Campbell with a printed copy of Service Order No. 00801-910733027. *See* Service Order Received on Oct. 7, 2007 as Ex. H.

230. Upon inspecting the document, Ms. Campbell noticed and pointed out that the Service Order was dated July 4, 2007, not May 2007, the day she actually returned the Compaq laptop to the Defendants for repair.  Campbell Aff. ¶160.

231. The July 4, 2007 date on the Service Order gave the appearance that the Defendants received and processed the Compaq laptop for repair on that day.  Campbell Aff. ¶161.

232. However, Ms. Campbell actually left her Compaq laptop at Defendant Best Buy's Tenleytown store for repair on May 19, 2007.  Campbell Aff. ¶162.

233. Defendant Geek Squad's agents confirmed that the July 4, 2007 date corresponded with the day the order was entered.  Campbell Aff. ¶163.

234. A notation on the July 4, 2007 Service Order indicates that an individual with the initials "DF" generated the form.  *See* Service Order Received on Oct. 7, 2007 as Ex. H.

235. During the conversation between Ms. Campbell and the Geek Squad Agents present at the help desk, the agents repeatedly referred to "David" as the Geek Squad Agent who received Ms. Campbell's Compaq laptop on May 2007.  Campbell Aff. ¶164.

236. The Geek Squad Agents then repeatedly questioned why their colleague David LNU would have generated a Service Order so long after the Compaq computer was brought in for repair.  Campbell Aff. ¶165.

237. Several Defendant Geek Squad Agents searched the backroom storage area in an attempt to locate Ms. Campbell's missing Compaq laptop.  Campbell Aff. ¶166.

238. The search for Ms. Campbell's Compaq laptop was unsuccessful.  Campbell Aff. ¶167.

**N.  Ms. Campbell Made Additional Requests for an Explanation and Resolution**

239. Ms. Campbell spoke with Delunte Lewis, who introduced himself as the Assistant Manager of Defendant Best Buy's Tenleytown store on October 7, 2007.  Campbell Aff. ¶168.

240.  The Geek Squad Agents confirmed to Mr. Lewis that Ms. Campbell's Compaq laptop was not in the store.  Campbell Aff. ¶169.

241.  Mr. Lewis asked Ms. Campbell how he could help resolve the issue.  Campbell Aff. ¶170.

242.  In response, Ms. Campbell asked for an explanation regarding what happened to her Compaq laptop.  Campbell Aff. ¶171.

243.  Ms. Campbell also wanted to know why she had been lied to for months as to the status and location of her Compaq laptop.  Campbell Aff. ¶172.

244.  Ms. Campbell also requested compensation from Defendant Best Buy in the amount of two thousand five hundred dollars ($2,500.00) for her Compaq computer and its contents.  Campbell Aff. ¶173.

245.  Moreover, Ms. Campbell advised Mr. Lewis that she would only accept compensation in the form of a check -- not a Best Buy gift card -- by the end of the week.  Campbell Aff. ¶174.

246.  Mr. Lewis did not offer to replace Ms. Campbell's Compaq laptop.  Campbell Aff. ¶175.

247.  Similarly, Mr. Lewis did not offer to compensate Ms. Campbell for her missing Compaq laptop.  Campbell Aff. ¶176.

248.  Mr. Lewis said that he was not authorized to provide compensation.  Campbell Aff. ¶177.

249.  Instead, Mr. Lewis stated that he would contact Ms. Campbell after discussing the situation with Robert Delissio, Defendant Best Buy's then General Manager at the Tenleytown store.  Campbell Aff. ¶178.

250.  Ms. Campbell requested follow up information.  Campbell Aff. ¶179.

251.  Mr. Lewis supplied Ms. Campbell with his email address, along with those for Robert Delissio, and Defendant Best Buy's District Services Manager, Chris Arnold.  A copy of the email addresses is attached as Ex. I; Campbell Aff. ¶180.

252.  Ms. Campbell left a copy of her August 24, 2007 letter to Mr. French with Mr. Lewis. Campbell Aff. ¶181.

253.  During this October 7th conversation, Ms. Campbell also stated her intention to seek legal recourse if she did not receive a response by the close of business on October 9, 2007.  Campbell Aff. ¶182.

254.  Ms. Campbell received no response.  Campbell Aff. ¶183

255.  On October 10, 2007, Ms. Campbell sent a follow-up email to the addresses Mr. Lewis provided.  A copy of the email from Raelyn Campbell to Robert Delissio, General Manager, Best Buy (Tenleytown), Chris Arnold, Best Buy District Services Manager, and Delunte Lewis, Best Buy Assistant Manager (Tenleytown) (Oct. 10, 2007). A copy of the Oct. 10, 2007 email is attached as Ex. J.

256.  More specifically, Ms. Campbell sent her October 10th electronic communication to Robert Delissio (General Manager), with copies to Chris Arnold (District Services Manager), Delunte Lewis (Assistant General Manager-Tenleytown), and Michael French (Customer Service).  *See id.*

257.  Although Ms. Campbell's October 10th email to Mr. Arnold bounced back, none of the Defendants' other employees responded to Ms. Campbell's October 10th email. Campbell Aff. ¶184.

**O.  Ms. Campbell Exacerbated  a Shoulder Injury While Using a Borrowed Laptop**

258.  As a result of the loss of her Compaq laptop and subsequent delay in compensation by Defendants, Ms. Campbell was forced to borrow and haul a laptop back and forth from her office to home to access the internet and complete work assignments, starting in

259.   Ms. Campbell borrowed from her office a Compaq Model No. R3230US, Product No. PF135UA#ABA.  Campbell Aff. ¶186.

260.   With dimensions of 12" for the width and 14.25" for the length, this borrowed laptop weighed eight and a half pounds (8.5 lbs).  Campbell Aff. ¶187.

261.   The total weight of the borrowed laptop, power cord and protective case is approximately twelve and half pounds (12.5 lbs).  Campbell Aff. ¶188.

262.   The toting of this borrowed laptop exacerbated an injury Ms. Campbell sustained on August 25, 2007.  Campbell Aff. ¶189.

263.   More specifically, on August 25th, Ms. Campbell sustained a severe shoulder injury in an unrelated event.  Campbell Aff. ¶190.

264.   The treating physicians in the emergency room advised Ms. Campbell to immobilize her left shoulder and arm for a month.  Campbell Aff. ¶191.

265.   These same treating physicians advised Ms. Campbell not to lift anything for two to three weeks.  Campbell Aff. ¶192.

266.   Eventually, Ms. Campbell's treating physicians told her she would need to make a decision whether to surgically repair her left shoulder.   Campbell Aff. ¶193.

267.   Ms. Campbell needed to have nightly access to her business email to prepare for a high-profile business trip to Asia.  Campbell Aff. ¶194.

268.   This requirement meant she needed to have a computer at home.  Campbell Aff. ¶195.

269.   But since the Defendants still had her Compaq laptop and during the day, the borrowed laptop served as a colleague's daytime office computer, Ms. Campbell had no choice but to transport her employer's laptop from her office to her home.  Campbell Aff. ¶196.

270.    Therefore, between August 27, 2007 and approximately October 15, 2007, Ms. Campbell used taxi cabs to transport the borrowed laptop to and from her office on a daily basis, at considerable cost to her.  Campbell Aff.  ¶197.

271.    Moreover, the weight of this unit rendered the doctor-ordered immobilization of her left shoulder impossible, and exacerbated her injury and resulting pain.  Campbell Aff. ¶198.

**P.  Ms. Campbell Purchased a Replacement Laptop and Service Contract**

272.    After leaving Defendant Best Buy's Tenleytown store on October 7, 2007, Ms. Campbell visited several local computer electronics stores and conducted on-line research on the cost and availability of comparable replacement laptop packages. Campbell Aff. ¶199.

273.    On October 7, 2007, after five months of waiting for Defendants to repair her Compaq laptop and return it to her, Ms. Campbell purchased a competitively priced and comparably equipped laptop from the Hewlett Packard (HP) on-line store.  Campbell Aff. ¶200.

274.    Like Ms. Campbell's Compaq laptop, her new HP laptop weighed approximately five pounds, had a maximum dimension (width) of 13.2", which enabled her to transport it in a small shoulder bag.  Campbell Aff.  ¶201.

275.    HP charged Ms. Campbell nine hundred fifty-one dollars and seventy-four cents ($951.74).  A copy of the Oct. 12, 2007 receipt is attached as Ex. K.

276.    This amount included the D.C. sales tax.  *See id.*

277.    Because delivery of her new laptop required a signature for delivery, Ms. Campbell shipped the new laptop to her office.  Campbell Aff. ¶202**.**

278.    Ms. Campbell received the HP laptop and purchased a replacement service contract from HP's on-line store on October 1, 2007.  Campbell Aff. ¶203.

279. HP charged Ms. Campbell two hundred eighty-five dollars and fifty-one cents ($285.51) for a replacement service contract. A copy of the Oct. 15, 2007 receipt is attached as Ex. L.

280. After the expiration of a free trial period, Ms. Campbell purchased replacement internet security software for her new HP laptop. Attached as Ex. M is a copy of the Apr. 29, 2008 receipt for internet security software.

281. This internet security software for her new HP laptop costs Ms. Campbell eighty-seven dollars and forty-four cents ($87.44), which included a seven dollar and forty-five cents ($7.45) shipping charge, on April 29, 2008. *See id.*

282. Additionally, Ms. Campbell also paid one hundred and twenty-five dollars ($125.00) on August 4, 2008 for data recovery services to restore deleted files from an old virus-ridden desktop computer that frequently crashed and therefore could not provide reliable and sustained internet access. Attached as Ex. N is a copy of the Aug. 4, 2008 receipt for data recovery; Campbell Aff. ¶204.

283. Ms. Campbell used this data recovery service to access some of the files that had previously been transferred from the old desktop computer to her Compaq laptop. Campbell Aff. ¶205.

284. While the majority of Ms. Campbell's files and data were backed up or otherwise replaceable, restoration of these contents required her to expend significant time and financial resources. Campbell Aff. ¶206.

285. Ms. Campbell will also have to expend significant time and financial resources to replace music and other files that were on her Compaq laptop. Campbell Aff. ¶207.

**Q. Ms. Campbell Engaged Law Enforcement and Consumer Agencies**

286. Ms. Campbell contacted the District of Columbia Police Department, District of Columbia Attorney's General's Office, The Federal Trade Commission, and the Better

287.    On October 10, 2007, Ms. Campbell filed an Offense Report No. 139443, Theft-I Report, with Third District Station of the District of Columbia Police Department. A copy of Ms. Campbell's Oct. 10, 2007 Report with the Third District is attached as Exhibit R.

288.    Ms. Campbell spoke to Detective Wilson of the District of Columbia Police Department Third District and explained to her that the Compaq laptop had apparently been stolen while in the Defendants' care. Campbell Aff. ¶208.

289.    Furthermore, on October 10, 2007, Ms. Campbell filed a complaint with the District of Columbia Attorney General's Office. Campbell Aff. ¶209.

290.    On October 11, 2007, Ms. Campbell received a telephone call from Dorlisa Carter, a Consumer Protection Specialist with the District of Columbia Attorney General's Office. Campbell Aff. ¶210.

291.    Ms. Carter contacted Ms. Campbell to discuss the complaint she filed with the District of Columbia Attorney General's Office. Campbell Aff. ¶211.

292.    During this telephone conversation, Ms. Carter reviewed with Ms. Campbell the history of her missing Compaq laptop. Campbell Aff. ¶212.

293.    At the conclusion of the conversation, Ms. Carter told Ms. Campbell that she would contact her after she spoke with a representative from Defendant Best Buy's Tenleytown store. Campbell Aff. ¶213.

### R.  Ms. Campbell Appealed to Defendant Best Buy Headquarters

294.    On October 15, 2007, Ms. Campbell submitted an on-line complaint to Defendant Best Buy Customer Care Department.  A copy of the email receipt of Oct. 15, 2007 is attached as Ex. S.

295.    On October 15th, Ms. Campbell received an automated reply email message pledging a response "within 3 business days."  Campbell Aff. ¶214.

296.    Defendant Best Buy never responded to Ms. Campbell's October 15th email as promised by the automated reply email.  Campbell Aff. ¶215.

297.    On October 18, 2007, Ms. Campbell sent a follow-up email to Defendant Best Buy Customer Care requesting a telephone number of a manager with whom she could discuss her situation.   A copy of the Oct. 18, 2007 email is attached as Ex. T.

298.    Likewise, the Defendants never responded to Ms. Campbell's October 18th writing.  Campbell Aff. ¶216.

### S.  Defendant Best Buy Unilaterally Issued a Credit to Ms. Campbell's Credit Card Account

299.    On or around October 22, 2007, Ms. Campbell received from Defendant Best Buy a package with a Best Buy gift card in the amount of five hundred dollars ($500.00).  A copy of the Best Buy package contents is attached as Ex. U.

300.    No prior notice or explanation to Ms. Campbell preceded the arrival of this Best Buy Gift Card.  Campbell Aff. ¶217.

301.    Unbeknownst to Ms. Campbell, Defendant Best Buy also made the unilateral decision to issue a credit to the credit card account she used to purchase her Compaq laptop on January 15, 2006.  Campbell Aff. ¶218.

302.  Specifically, on October 28, 2007, Defendant Best Buy issued a credit to Ms. Campbell's account in the amount of one thousand one hundred ten dollars and thirty-five cents ($1110.35).  Campbell Aff. ¶219.

303.  This applied credit, however, did not compensate Ms. Campbell for the full cost of replacing the computer and the Best Buy Performance Service Plan.  Campbell Aff. ¶220.

304.  The credit did not compensate Ms. Campbell for the full value of the contents on her Compaq laptop.  Campbell Aff. ¶221.

305.  Furthermore, the credit did not cover the expenses Ms. Campbell incurred when the Defendants lost her Compaq laptop.  Campbell Aff. ¶222.

306.  Furthermore, the applied credit was not discovered by Ms. Campbell until she reviewed her account statement in late November, 2007.  Campbell Aff. ¶223.

307.  Ms. Campbell received no correspondence regarding the proposed compensation until after the credit was applied unilaterally by Defendant Best Buy.  Campbell Aff. ¶224.

308.  Specifically, on October 29, 2007, Ms. Campbell received a copy of Best Buy's response to Ms. Campbell's Complaint, written by Robert Feivor on behalf of Best Buy Company, Incorporated directed to Dorlisa Carter of the Office of the Attorney General for the District of Columbia.  Letter Robert Feivor to Dorlisa Carter of 10/16/07 is attached as Ex. V.

309.  Best Buy's response is dated October 16, 2007 and states that Best Buy "will issue a refund of [one thousand one hundred ten dollars and thirty-five cents] $1110.35 . . . directly to the account used to purchase the product and warranty," and that a five hundred dollar ($500.00) Best Buy gift card will be requested "to address other concerns and inconveniences resulting."  10/16/07 Letter from Robert Feivor at Ex. V.

310.  Mr. Feivor also states in his writing that "Best Buy feels we have appropriately addressed this issue." *Id.*

311.  On November 3, 2007, Ms. Campbell received a letter dated October 31, 2007 from Ms. Carter of the District of Columbia Attorney General's Office. Letter from Dorlisa Carter to Raelyn Campbell of 10/31/07 is attached as Exhibit W.

312.  Ms. Carter's letter to Ms. Campbell included a copy of the October 16th communication from Mr. Feivor to Ms. Carter. *See id.*

313.  On November 5, 2007, Ms. Campbell returned a telephone call from Ms. Carter of the District of Columbia Attorney General's Office. Campbell Aff. ¶225.

314.  On the telephone call, Ms. Carter communicated to Ms. Campbell that Defendant Best Buy made a compensation offer of one thousand one hundred ten dollars and thirty-five cents ($1110.35) and a five hundred dollar ($500.00) Best Buy gift card. Campbell Aff. ¶226.

315.  Ms. Campbell advised that the offer was unacceptable, as it did not cover the cost of replacing the laptop package, the contents on her Compaq laptop and ongoing costs related to identity theft protection that she would incur. Campbell Aff. ¶227.

316.  During this November 5th conversation, Ms. Campbell raised the issue of identity theft with Ms. Carter. Campbell Aff. ¶228.

317.  Ms. Carter suggested that Ms. Campbell should consider subscribing to a credit monitoring service. Campbell Aff. ¶229.

318.  Ms. Carter requested that Ms. Campbell submit a written response to Defendant Best Buy rejecting the offer and provide Ms. Carter with a copy of the same for the complaint file. Campbell Aff. ¶230.

### T. Ms. Campbell Made Another Attempt to Contact Defendant Best Buy Headquarters

319.  On November 7, 2007, Ms. Campbell attempted to contact Best Buy headquarters via telephone and email.  A copy of the Nov. 7, 2007 email confirmation receipt is attached as Ex. X.; Campbell Aff. ¶231.

320.  Ms. Campbell's telephone call and email sought an opportunity to discuss her concerns about Defendant Best Buy's handling of her case, identity theft, and the broader implications of its employees' practices.  Campbell Aff.  ¶232.

321.  Ms. Campbell received an automated reply message pledging a response "within 3 business days." *See* Nov. 7, 2007 email as Ex. X.

322.  Defendant Best Buy never responded to Ms. Campbell's email as promised by the automated reply email.  Campbell Aff. ¶233.

### U. Ms. Campbell Filed a *Pro Se* Lawsuit Against Best Buy.Com

323.  On November 15, 2007, Ms. Campbell wrote to Mr. Feivor at Defendant Best Buy Customer Care.  Letter from Raelyn Campbell to Robert Feivor of 11/15/07 is attached as Ex. Y.

324.  Ms. Campbell explicitly reconfirmed that Defendant Best Buy's October 16, 2007 offer was unacceptable.  *See id.*

325.  On November 16, 2007, Ms. Campbell commenced a *pro se* lawsuit against Best Buy.Com, LLC in the District of Columbia Superior Court, Case No.  2007 CA 007641 B.  A copy of the Nov. 16, 2007 Compl. is attached as Ex. Z.

326.  Consistent with the declarative she offered in her November 15, 2007 writing to Mr. Feivor, Ms. Campbell filed the lawsuit to "persuade Best Buy to reassess its ways and implement adequate policies and procedures to more effectively safeguard future customers' property against theft and to make minimizing a customer's chances of

327.    On November 30, 2007, Ms. Campbell received a telephone message from Mr. Ryan Eddy, Associate Corporate Counsel for Defendant Best Buy.  Campbell Aff. ¶234.

328.    In the telephone message Mr. Eddy asked Ms. Campbell if she would be willing to discuss the matter to see if a "reasonable resolution" was attainable.  Campbell Aff. ¶235.

329.    On December 4, 2007, Ms. Campbell returned Mr. Eddy's telephone call.  Campbell Aff. ¶236.

330.    Because Mr. Eddy was not available, Ms. Campbell left him a voicemail message. Campbell Aff. ¶237.

331.    In her voicemail message, Ms. Campbell advised Mr. Eddy that she was willing to speak with him to find a mutually acceptable resolution.  Campbell Aff. ¶238.

332.    Ms. Campbell also requested that before returning her telephone call, Mr. Eddy make sure he fully understood the background of the situation and the reason she had filed the suit.  Campbell Aff. ¶239.

333.    Mr. Eddy did not return Ms. Campbell's telephone call.  Campbell Aff. ¶240.

334.    In a letter to Ms. Campbell dated December 20, 2007 and received by Ms. Campbell on December 22, 2007, Mr. Eddy offered a settlement of two thousand five hundred dollars ($2,500.00).  Letter from Ryan Eddy to Raelyn Campbell of 12/20/07 is attached as Ex. AA; Campbell Aff. ¶241.

335.    Also on December 20, 2007, Ms. Campbell donated Defendant Best Buy's five hundred dollar ($500.00) gift card to a non-profit organization.  Campbell Aff. ¶242.

336.   The donation was memorialized with a letter of thanks dated December 31, 2007 to Ms. Campbell.  Letter from Mindy L. Kotler to Raelyn Campbell of 12/31/07 is attached as Ex. BB.

337.   The Best Buy gift card was donated by Ms. Campbell after Defendant Best Buy failed to accept her offer to return it.  *See* 11/15/07 Letter from Raelyn Campbell at Ex. Y.

338.   By letter dated January 3, 2008, Ms. Campbell declined Defendant Best Buy's December 20th settlement offer.  *See* Letter from Raelyn Campbell to Ryan Eddy of 1/3/08 is attached as Ex. CC.

339.   To ensure that Mr. Eddy received her January 3rd letter by his requested deadline, Ms. Campbell emailed him a copy of the same.  Email from Raelyn Campbell to Ryan Eddy (Jan. 3, 2008) is attached as Ex. DD.

340.   In rejecting the Defendant Best Buy's January 3rd settlement offer, Ms. Campbell explained that

> [w]ere it simply a matter of a stolen computer, I would have spared myself the expense, hassle, and time of a civil suit, settled for a $5000 small claims judgment, and sucked up the remaining losses.  However, given the seriousness of the issues involved and Best Buy's responses to the initial theft and my subsequent follow-up efforts, I cannot with a good conscience drop this suit until Best Buy demonstrates that it takes customers' privacy protection seriously.

*Id*. at 1.

341.   In her January 3rd writing, Ms. Campbell also reaffirmed to Mr. Eddy that she remained open to discussing the matter and finding a mutually acceptable resolution. *See id*. at 2.

342.   Ms. Campbell, however, never heard from Mr. Eddy again.  Campbell Aff.243

343.   The D.C. Superior Court ultimately dismissed Ms. Campbell's lawsuit on procedural grounds.  Campbell Aff. ¶244.

**V.   Defendants Never Located Ms. Campbell's Compaq Laptop and Never Advised of Potential Identity Theft Exposure**

344.   In her November 16, 2007 writing to Ms. Carter, Ms. Campbell again raised the issue of her potential exposure to identity theft.  *See* Letter from Raelyn Campbell to Dorlisa Carter of 11/16/07 is attached as Ex. EE.

345.   Likewise, in her November 15, 2007 communication to Mr. Feivor, a Defendant Best Buy employee, Ms. Campbell reiterated her concern to him about her potential exposure to identity theft.  *See* 11/15/07 Letter from Raelyn Campbell to Robert Feivor at Ex. Y at 2.

346.   To ensure that Mr. Feivor received her November 15th writing, Ms. Campbell sent him an electronic copy of the same on November 16, 2007.  Email from Raelyn Campbell to Robert Feivor (Nov. 16, 2007) is attached as Ex. FF.

347.   Since the November 16th email is a copy of Ms. Campbell's November 15th letter, it too advises Mr. Feivor of her identity theft risk.  *See id.*

348.   On December 13, 2007, Ms. Campbell filed a consumer complaint with the District of Columbia Office of Attorney General.  Email from Raelyn Campbell to Consumer Complaint Specialist at the District of Columbia Office of the Attorney General (Dec. 13, 2007) is attached as Ex.  GG.

349.   Ms. Campbell's December 13th email also memorializes her concerns about identity theft exposure.  *See id.*

350.   Upon information and belief, since May 19, 2007 to the present, the location of Ms. Campbell's Compaq laptop is unknown to the Defendants.

351.   Ms. Campbell also has no knowledge of the location of her Compaq laptop.  Campbell Aff. ¶245.

352.    Furthermore, as of the date of this Complaint, Defendant Best Buy has refused to respond to Ms. Campbell's multiple requests for an explanation of what happened to her Compaq laptop.  Campbell Aff. ¶246.

353.    Defendants have no knowledge of who has had or may have future access to Ms. Campbell's personal and confidential files on her Compaq laptop.  Campbell Aff. ¶247.

354.    Ms. Campbell has no knowledge as to who has had or may have future access to the information on her Compaq laptop.  Campbell Aff.  ¶248.

355.    Nevertheless, Defendants took from May 19, 2007 until August 9, 2007 to admit to Ms. Campbell that they did not know the location of her Compaq laptop.  Campbell Aff. ¶249.

356.    Moreover, none of the Defendants ever alerted Ms. Campbell to the fact that her security had been compromised.  Campbell Aff. ¶250.

357.    Despite numerous communications by Ms. Campbell to Defendants regarding the risk of identity theft, the Defendants to this date have yet to acknowledge her concerns. Campbell Aff. ¶251.

358.    The Defendants failed to demonstrate appreciation for the resulting risk of identity theft and its impact on Ms. Campbell's financial well being.  Campbell Aff. ¶252.

359.    To date, the Defendants have not provided Ms. Campbell with written notification of the security breach.   Campbell Aff. ¶253.

360.    Such notification is required by the District of Columbia Consumer Personal Information Security Breach Notification Act of 2006, D.C. CODE ANN. § 28 – 3851 (2009).  Campbell Aff. ¶254.

361.    The Defendants did not perform a repair on Ms. Campbell's Compaq laptop that resulted in the loss of all her confidential data.  Campbell Aff. ¶255.

362.  Instead, Ms. Campbell sustained a loss because the Defendants lost her Compaq laptop. Campbell Aff. ¶256.

**FIRST COUNT**
**Magnuson-Moss Warranty Act**

363.  Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 362.

364.  Congress enacted the Magnuson-Moss Warranty Act (MMWA) 15 U.S.C. §2301 *et seq.* (2009) in 1975 to protect consumers against unconscionable written warranties and service contracts and breach of implied warranties.  *See* 15 U.S.C. §2301 *et seq.* (2009).

365.  Section 2310(a)(1) memorializes Congress' policy preference that warrantors "establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."  15 U.S.C. §2310(a)(1).

366.  If these informal dispute settlement mechanisms are unsuccessful, a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 U.S.C. §2301 *et seq*.,] or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. §2310(d)(1).

367.  Additionally, 15 U.S.C. §2302(4) makes it clear that MMWA only applies to consumer products manufactured after January 4, 1975.  *See* 15 U.S.C. 2312(a).

368.  MMWA defines a consumer as a buyer or any person to whom a consumer product is transferred.  *See* 15 U.S.C. §2301(3).

369.  At all relevant times, Ms. Campbell's actions make her a "consumer" within the meaning of 15 U.S.C. §2301(3).  *See id.*

370.  The Compaq laptop Ms. Campbell purchased from Defendant Best Buy's Tenleytown store qualifies as a "consumer product."  *See* 15 U.S.C. §2301(1).

371.  Defendant Best Buy is a "supplier" as outlined in 15 U.S.C. §2301(4).  *See* 15 U.S.C. §2301(4).

372.  Defendant Best Buy is a "warrantor" as defined in 15 U.S.C. §2301(5).  *See* 15 U.S.C. §2301(5).

373.  As the regulation promulgated by the Federal Trade Commission illustrates, Defendant Geek Squad's services are covered under the MMWA.  *See* 16 C.F.R. §700.1(h).

374.  Ms. Campbell's Compaq laptop came with "implied warranties" as defined by the MMWA.  *See* 15 U.S.C. §2301(7).

375.  At Defendant Best Buy's Tenleytown store, Ms. Campbell purchased a Best Buy Performance Service Plan, the functional equivalent of a "service contract" as defined in 15 U.S.C. §2301(8).  *See* 15 U.S.C. §2301(8).

376.  The replacement provisions in Ms. Campbell's Best Buy Performance Service Plan for her Compaq laptop are consistent with the MMWA's definition of "replacement."  *See* 15 U.S.C. §2301(11); *see also* Jan. 15, 2006 Receipt attached as Ex. A at 3**.**

377.  Ms. Campbell's Compaq laptop was "distributed in commerce" as defined in 15 U.S.C §2301(13).  *See* 15 U.S.C §2301(13).

378.  Additionally, Ms. Campbell's laptop was transported in "commerce" as defined by 15 U.S.C. §2301(14).  *See* 15 U.S.C. §2301(14).

379.  Ms. Campbell purchased her laptop in the District of Columbia which is a "State" as defined by 15 U.S.C. §2301(15).  *See* 15 U.S.C. §2301(15).

380.    According to the MMWA, a written warranty

> is any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. §2301(6).

381.    The Best Buy Performance Service Plan offered by Defendant Best Buy and purchased by Ms. Campbell for her Compaq laptop incorporates the manufacturer's written warranty.

382.    Therefore, Ms. Campbell's Best Buy Performance Service Plan is also subject to the MMWA statutory provisions governing written warranties.

383.    Consistent with the Congressional policy preference, articulated in 15 U.S.C. §2310(a)(1), Ms. Campbell worked diligently to informally resolve this matter.

384.    Because such efforts were unsuccessful and Ms. Campbell remains a consumer damaged by the Defendants' failure to comply with its respective obligations under the MMWA, written warranty, implied warranty and service contract, she brings this suit for damages and other legal and equitable relief. *See* 15 U.S.C. §2310(d)(1).

385.    Ms. Campbell's Compaq laptop, purchased from Defendant Best Buy on January 15, 2006, was manufactured after January 4, 1975. *See* 15 U.S.C. §2312(a).

386.    As a written warranty, the Best Buy Performance Service Plan, failed to comply with the statutory rules governing the contents of a written warranty. *See* 15 U.S.C. §2302(a).

387.    Additionally, the Best Buy Performance Service Plan failed to comply with the federal minimum standards for warranties as defined in 15 U.S.C. §2304. *See* 15 U.S.C. §2304.

388.  This failure means that the Defendants could not satisfy the designation requirements for a written warranty outlined in 15 U.S.C. §2303.  *See* 15 U.S.C. §2303.

389.  Furthermore, the Defendants failed to conspicuously differentiate between full and limited warranties as defined in 15 U.S.C. §2305.  *See* 15 U.S.C. §2305.

390.  As a service contract, the Best Buy Performance Service Plan failed to comply with the disclosure rules governing service contracts outlined in 15 U.S.C. §2306.  *See* 15 U.S.C. §2306.

391.  The Defendants failed to comply with the mandates governing implied warranties as defined in 15 U.S.C. §2308.  *See* 15 U.S.C. §2308.

392.  Approximately sixteen months after Ms. Campbell purchased her Compaq laptop it stopped operating and could no longer serve its intended purpose.

393.  Relying on the information she received from Mary Doe, the Geek Squad Counter Intelligence Agent who sold Ms. Campbell her Compaq laptop and the Best Buy Performance Service Plan for the same, Ms. Campbell returned her malfunctioning computer to Defendant Best Buy's Tenleytown store on May 19, 2007.

394.  After Geek Squad Counter Intelligence Agent John Doe confirmed the validity of Ms. Campbell Best Buy Performance Service Plan, Agent John Doe, on behalf of his employer, took possession of Ms. Campbell's Compaq laptop for repair.

395.  Ms. Campbell suffered an ascertainable loss of money and property.

396.  The Defendants did not "remedy" Ms. Campbell's Compaq laptop as this term is defined in 15 U.S.C. §2301(10).  *See* 15 U.S.C. §2301(10).

397.  Instead, the Defendants lost Ms. Campbell's Compaq laptop.

398.  Monetarily, Ms. Campbell lost her initial investment in the Compaq laptop, the preinstalled programs, the self-installed programs, the cost of the Best Buy Performance Service Plan, music files, photos and family recipes.

399.    Additionally, Ms. Campbell paid money for a replacement HP laptop computer, service contract for the same, digital music and software files and data recovery services.

400.    Because Ms. Campbell's Compaq laptop contained confidential and sensitive information, including her tax returns and social security number, Ms. Campbell had to retain the services of an identity theft protection company to safeguard her financial well being for the foreseeable future.

    **WHEREFORE**, Ms. Campbell, demands judgment against Defendants as follows:

    1.    For costs and damages in the amount of her loss, plus interests;

    2.    The expenses and attorney's fees related to this litigation; and

    3.    For other just and equitable relief the Court deems appropriate.

## SECOND COUNT
## VIOLATION OF D.C. CONSUMER PROTECTION STATUTES

401.    Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 400.

### A.   Unlawful Trade Practices

402.    Defendants' course of conduct violates D.C. CODE ANN. §28-3904 (2009), the District of Columbia Unlawful Trade Practices statute.  *See* D.C. CODE ANN. § 28-3904 (2009).

403.    The Defendants misrepresented material facts to Ms. Campbell concerning her Compaq laptop and this misrepresentation mislead Ms. Campbell for several months.  *See* D.C. CODE ANN. §28-3904(e).

404.    The Defendants failed to disclose materials facts to Ms. Campbell and this series of omissions mislead Ms. Campbell.  *See* D.C. CODE ANN. §28-3904(f).

405.    Because the Defendants received compensation from Ms. Campbell to repair her Compaq laptop, their decision to falsely advise her that they were in the process of repairing her Compaq laptop when in fact they could not locate it, violates D.C. CODE ANN. §28-3904(p).  *See* D.C. CODE ANN. §28-3904(p).

406.    On May 19, 2007 when Ms. Campbell returned her Compaq laptop to the Tenleytown retail store for repair, Defendant Geek Squad violated D.C. CODE ANN. §28-3904(q) by failing to give her a Service Order evidencing that she transferred possession of her computer to the Defendants.  *See* D.C. CODE ANN. §3904(q)

407.    Additionally, in violation of D.C. CODE ANN. §3904(u), the Defendants repeatedly advised Ms. Campbell's that they sent her computer to Louisville for repair when in fact the Defendants' internal records later revealed that Ms. Campbell's Compaq laptop never officially left the Tenleytown retail store.  *See* D.C. CODE ANN. §28-3904(u).

408.    Furthermore, the Defendants violated D.C. CODE ANN. §28-3904(x) when they sold Ms. Campbell a consumer good in a condition or manner inconsistent with that warranted by operation of sections 28:2-313 through 315 of the District of Columbia Code and that which is required under federal law.[1]  *See* D.C. CODE ANN. §28-3904(x).

409.    The Defendants violated D.C. CODE ANN. §28-3904(dd) because they did not comply with the provisions of title 16 of the District of Columbia Municipal Regulations.  *See* D.C. CODE ANN. § 28-3904(dd).

410.    Defendants are "merchants."  *See* D.C. CODE ANN. § 28-3901(a)(3).

411.    Defendants are involved in the "trade practice" of selling and repairing consumer products.  *See* D.C. CODE ANN. §28-3901(a)(6).

---

[1] Section 28:2-313 of the District of Columbia Code governs express warranties.  Implied warranty of merchantability is discussed in D.C. CODE ANN. §28:2-314.  Lastly, D.C. CODE ANN. §28:2-315 deals with implied warranty for fitness of a particular purpose.

412.   Ms. Campbell purchased from Defendants a Compaq laptop which qualifies as a "good." *See* D.C. CODE ANN. §28-3901(a)(7).

413.   Ms. Campbell also purchased from the Defendants a Best Buy Performance Service Plan that renders "services" consistent with the definition of the same in D.C. CODE ANN. §28-3901(a)(7).  *See* D.C. CODE ANN. §28-3901(a)(7).

414.   Accordingly, under D.C. CODE ANN. §28-3905(k)(1)(A), the Defendants' actions entitle Ms. Campbell to treble damages, or one thousand five hundred dollars ($1,500.00) per violation, whichever is greater.  *See* D.C. CODE ANN. § 28-3905(k)(1)(A).

415.   Likewise, D.C. CODE ANN. §28-3905(k)(1)(A), awards Ms. Campbell attorney's fee. *See id.*

416.   Section §28-3905(k)(1)(A) makes Ms. Campbell eligible for punitive damages.  *See id.*

**B.  Breach of Security**

417.   Defendants' loss and subsequent inability to locate Ms. Campbell's Compaq laptop is a breach of security as defined by District of Columbia law.  *See* D.C. CODE ANN. §28-3851(1) (2009).

418.   Ms. Campbell's Compaq laptop contained the type of "personal information" that required the Defendants to immediately notify her and advise that they could not find her Compaq laptop.  *See* D.C. CODE ANN. §28-3851(3)(A).

419.   Specifically, Ms. Campbell's Compaq laptop housed confidential and sensitive documents including her tax returns that contained her name, social security number, address, date of birth; her advanced medical directive; as well as other documents with more sensitive personal information consistent with those explicitly delineated in D.C. CODE ANN. §28-3851(3)(A).  *See* D.C. CODE ANN. §28-3851(3)(A).

### C. Notification of Security Breach

420.   The Defendants never notified Ms. Campbell of this breach of her security as required by D.C. CODE ANN. §28-3852(b).   *See* D.C. CODE ANN. §28-3852(b).

421.   As merchants who are in the business of selling and repairing computers, Defendants are required by District of Columbia law to notify the owner or licensee about a security breach in the most expedient time possible after discovering the breach.   *See* D.C. CODE ANN. §28-3852(b).

422.   To date, Defendants have not satisfied this provision requiring expedient notification of the breach of Ms. Campbell's security.   *See id.*

423.   Defendants had multiple opportunities over an extended period to advise Ms. Campbell of the security breach but have elected to remain silent.

424.   The District of Columbia delineates several methods for the Defendants to provide adequate notification.

425.   These methods include written notice, electronic notice, substitute notice and email notice.   *See* D.C. CODE ANN. §28-3851(2).

426.   As of the filing of this Complaint, Defendants have not used any of the delineated methods to inform Ms. Campbell of the security breach.

427.   Defendants' course of conduct resulted in Ms. Campbell having no access to files stored on her Compaq laptop.

428.   Defendants' course of action means an unknown number of unauthorized persons potentially have access to Ms. Campbell's personal confidential and sensitive information.

429.   Ms. Campbell suffered a monetary loss as a direct and proximate result of the Defendants' failure to notify her about the breach.

430. These losses include, but are not limited to, the monies Ms. Campbell paid to duplicate and transfer to her HP laptop the contents formerly warehoused on her Compaq laptop and the cost of obtaining identity theft protection services.

431. Ms. Campbell is entitled to recover actual damages, the cost of this action, and reasonably attorney's fees because the Defendants' violated the foregoing statutes. *See* D.C. CODE ANN. §28-3853(a).

   **WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

   1. For cost and expenses of this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorney's fees;

   2. Enjoining Defendants to cease and desist from engaging further in the practices described in this Complaint; and

   3. For other just equitable relief the Court deems appropriate.

## THIRD COUNT
## VIOLATION OF D.C. CONSUMER PRACTICES REGULATION

432. Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 431.

   **A. Receiving Items to be Repaired**

433. The Defendants violated D.C. MUN. REGS. tit.16, §632 (2004).

434. This regulation requires the repairperson of a consumer good to create a receipt disclosing the name, business address and telephone number of the consumer good repair dealer (as that name appears on the license) who is taking possession of the good or whose agent is taking possession of the good. *See* D.C. MUN. REGS. tit. 16, §632.1(a).

435. On May 19, 2007, when Ms. Campbell took her malfunctioning Compaq laptop to Defendants for repair, she did not receive a Service Order, the functional equivalent to a receipt as required by a District of Columbia regulation. *See id.*

436.    Ms. Campbell received only an In-Store Tactical Analysis form instead of a Service Order.

437.    According to the oral information Ms. Campbell received from the Geek Squad employee on October 7, 2007, receipt of an In-Store Tactical Analysis form was contrary to the Defendants' standard procedure when taking possession of a computer, a good for repair.

438.    A District of Columbia regulation requires the name and signature of the person who actually takes the good into custody with the date the item was received for repair. *See* D.C. MUN. REGS. tit. 16, §632.1(b).

439.    Notwithstanding the fact that the In-Store Tactical Analysis form received by Ms. Campbell is not a receipt, this document did not have a date and was not signed by the Geek Squad Counter Intelligence Agent who received Ms. Campbell's Compaq laptop.

440.    The Service Order that was created on July 4, 2007 and obtained by Ms. Campbell on October 7, 2007, shows only an employee's initials, "DF," and lacks a full name and signature.

441.    Finally, the regulation requires a description of the good including make and model number or other features that reasonably identify the goods. *See* D.C. MUN. REGS. tit. 16, §632.1(c).

442.    The make and model description provided on the In-Store Tactical Analysis form given to Ms. Campbell lacks specificity that would reasonably identify any laptop in the Defendants' possession as the one Ms. Campbell purchased on January 15, 2006.

443.    Ms. Campbell did not receive a Service Order, a receipt, confirming that she transferred possession of her Compaq to the Defendants, until October 7, 2007.

444.    That date is nearly five (5) months after Ms. Campbell's entrusted her Compaq laptop to the Defendants for repair.

445.    Moreover, the Service Order received on October 7th incorrectly indicates that Ms. Campbell brought her Compaq laptop to the Tenleytown retail store on the July 4, 2007, instead of May 19, 2007.

**WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

1. Costs and damages in the amount of her loss, plus interests;

2. Expenses and attorney's fees related to this litigation; and

3. For other just and equitable relief the Court deems appropriate.

### B. Prohibited Acts and Conduct

446.    Defendants are "consumer good repair dealers." *See* D.C. MUN. REGS. tit.16, §699.1 (2004).

447.    Defendants perform "repair services" at their Tenleytown location. *See id.*

448.    Ms. Campbell's actions at all relevant times makes her "customer." *See id.*

449.    Ms. Campbell's Compaq laptop constitutes a "consumer good." *See id.*

450.    The Defendants violated D.C. MUN. REGS. tit.16, §650.1 (2004), by continuously offering Ms. Campbell untrue and misleading statements concerning her Compaq laptop. *See* D.C. MUN. REGS. tit.16, §650.1 (2004).

451.    The Defendants' dishonest, fraudulent and deceitful actions with respect to repairing Ms. Campbell's Compaq laptop are contrary to D.C. MUN. REGS. tit.16, §650.4 (2004). *See* D.C. MUN. REGS. tit.16, §650.4 (2004).

452.    Additionally, the Defendants condoned and affirmed their employee's actions notwithstanding the fact that their employees' actions are prohibited by this chapter. *See* D.C. MUN. REGS. tit.16, §650.8 (2004).

453.    Because the Defendants consistently deviated from and disregarded accepted trade standards, they violated D.C. MUN. REGS. tit.16, §650.9 (2004). *See* D.C. MUN. REGS. tit.16, §650.9 (2004).

454. Lastly, the Defendants behavior is inconsistent with D.C. MUN. REGS. tit.16, §650.10 (2004).

455. By failing to comply with the applicable provisions of this chapter, the Defendants have caused Ms. Campbell to suffer a loss. *See id.*

    **WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

    1. Costs and damages in the amount of her loss, plus interests;

    2. Expenses and attorney's fees related to this litigation; and

    3. For other just and equitable relief the Court deems appropriate.

## FOURTH COUNT
## BREACH OF CONTRACT

456. Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 455.

457. Defendants' course of conduct violated the District of Columbia common law governing contracts.

458. Mary Doe, an employee of Defendant Geek Squad, promoted the benefit of a Best Buy Performance Service Plan to Ms. Campbell.

459. Ms. Campbell accepted that offer by paying Defendant Best Buy three hundred ninety-nine dollars and ninety-nine cents ($399.99) for the Best Buy Performance Service Plan.

460. However, when Ms. Campbell attempted to have the Defendants satisfy their contractual obligation under this Plan by repairing her Compaq laptop, the Defendants failed to honor the terms of the January 15, 2007 agreement.

461. Instead, the Defendants lost Ms. Campbell's Compaq laptop.

**WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

1. Costs and damages in the amount of her loss, plus interests;

2. Expenses and attorney's fees related to this litigation; and

3. For other just and equitable relief the Court deems appropriate.

**FIFTH COUNT**
**BREACH OF WARRANTY**

462. Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 456.

**A. Express Warranties**

463. The Defendants course of conduct violated the District of Columbia express warranty statute. *See* D.C. CODE ANN. §28:2-313 (2009).

464. On January 15, 2006, the day Ms. Campbell purchased her Compaq laptop at Defendant Best Buy's retail store in Tenleytown, Ms. Campbell relied on the affirmations offered by Defendant Geek Squad Counter Intelligence Agent Mary Doe that the selected Compaq computer would function as the Geek Squad employee described.

465. More specifically, on behalf of Defendant Geek Squad, Agent Mary Doe offered statements to Ms. Campbell that included affirmations that the selected Compaq unit would satisfy Ms. Campbell's performance, size, cost and data storage capacity requirements.

466. Because Ms. Campbell's Compaq laptop failed to perform, the Defendants' breached the express warranties.

### B.   Warranty of Merchantability

467.   The Defendants' course of conduct violated District of Columbia merchantability statute:  D.C. CODE ANN. § 28:2-314 (2009).  *See* D.C. CODE ANN. §28:2-314 (2009).

468.   Defendants are national retail merchants of electronic goods which includes laptop computers.  *See* D.C. CODE ANN. §28:2-104(1) (2009).

469.   Ms. Campbell's Compaq laptop is a "good" as defined in D.C. CODE ANN. §28:2-105(1) (2009).  *See* D.C. CODE ANN. §28:2-105(1) (2009).

470.   Because of a defective power switch, Ms. Campbell's Compaq laptop failed to function in its ordinary course.

471.   Under D.C. CODE ANN. §28:2-314(2)(c), goods are not merchantable if they are not fit for the ordinary purposes for which such goods are used.  *See* D.C. CODE ANN. § 28:2-314(2)(c) (2009).

WHEREFORE, Ms. Campbell demands judgment against Defendants as follows:

1.   Costs and damages in the amount of her loss, plus interests;

2.   Expenses and attorney's fees related to this litigation; and

3.   For other just and equitable relief the Court deems appropriate.

### SIXTH COUNT
### NEGLIGENT MISREPRESENTATION

475.   Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 474**.**

476.   Defendants' course of conduct violated the District of Columbia common law concerning negligent misrepresentation.

477.   The Defendants' employees repeatedly made misleading statements to Ms. Campbell regarding the location of her Compaq laptop.

478. When the Defendants discovered that they could not locate Ms. Campbell's Compaq laptop, the Defendants neglected to inform Ms. Campbell of the same.

479. Instead, the Defendants continued to make false statements that caused Ms. Campbell to believe that the Defendants were in fact repairing her Compaq laptop.

480. Additionally, the Defendants' employees assured Ms. Campbell that proper repair procedures were ongoing and being followed.

481. The statements made by Defendants' employees violated the Defendants' duty to provide truthful customer service information to Ms. Campbell.

482. The statements the Defendants' employees made to Ms. Campbell involved material facts concerning the location of her Compaq laptop.

483. But as of the filing of this Complaint, the Defendants have no idea of the location of Ms. Campbell's Compaq laptop.

484. Ms. Campbell relied on the statements offered by the Defendants' employees to her detriment.

485. This reliance caused Ms. Campbell not to have access to her laptop and files since May 19, 2007.

486. The Defendants' omission means Ms. Campbell did not purchase identity theft protection until six months after the Defendants breached the security of her personal information.

487. Defendants' conduct proximately caused Ms. Campbell to sustain injuries.

488. Specifically, Ms. Campbell lost her Compaq laptop and was required to purchase a replacement laptop, computer programs, digital music files, a service contract for her new HP laptop, data recovery services, and Identity Theft protection service because of the Defendants' negligence.

**WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

1.    Costs and damages in the amount of her loss, plus interests;

2.    Expenses and attorney's fees related to this litigation; and

3.    For other just and equitable relief the Court deems appropriate.

**SEVENTH COUNT**
**FRAUD**

489.    Ms. Campbell incorporates by reference the allegations contained in paragraphs 1 through 488.

490.    Defendants' course of conduct violates the District of Columbia common law governing fraud.

491.    The Defendants' employees knowingly made false representations regarding the repair status of Ms. Campbell's Compaq laptop.

492.    The Defendants' agents also knowingly made false representations about the location of Ms. Campbell's Compaq laptop.

493.    These statements constitute material facts.

494.    The Defendants' employees are expected and required to give truthful answers to a customer's questions and concerns.

495.    Ms. Campbell relied on the Defendants' false statements and representations regarding the location of her Compaq laptop and repair status of the same.

496.    Defendants' misrepresentations caused Ms. Campbell to waste valuable time traveling back and forth to the Tenleytown retail store for information and communicating with Defendants' agents via telephone.

497.    This misrepresentation also kept Ms. Campbell from properly protecting herself from identity theft and against an unauthorized person using the confidential and sensitive information on her Compaq laptop.

**WHEREFORE**, Ms. Campbell demands judgment against Defendants as follows:

1. Costs and damages in the amount of her loss, plus interests;

2. Expenses and attorney's fees related to this litigation; and

3. For other just and equitable relief the Court deems appropriate.

Respectfully submitted

**Rosemond Luke & Parker PLLC**                     **March 23, 2009**
By:    Herlande Rosemond                *of Counsel*
       Bar No.  480296                     Joyce B. Parker & John C. Luke, Jr.
1629 K Street NW                                     **Rosemond Luke & Parker PLLC**
Suite 300                                            jbparker@rolupa.com
Washington, D.C. 20006                               jcluke@rolupa.com

202.973.0164       Telephone
202.742.6301       Facsimile
hrosemond@rolupa.com